Jesse T. DUKE and Sidney
W. Fox, Plaintiffs,

v.

UNIROYAL, INC. and Uniroyal
Chemical Company, Inc.,
Defendants.

No. 87–741–CIV–5–H.

United States District Court,
E.D. North Carolina,
Raleigh Division.

Sept. 24, 1991.

Joyce L. Davis, Crisp, Davis, Schwentker, Page & Currin, Raleigh, N.C., for plaintiffs.

James G. Billings, Kimberly J. Korando, Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, Raleigh, N.C., for defendants.

## ORDER

MALCOLM J. HOWARD, District Judge.

This matter is before the court on the plaintiff Sidney W. Fox's motion for a temporary restraining order filed September 4, 1991. Pursuant to Rule 65 of the Federal Rules of Civil Procedure and with notice to all parties, this court conducted a hearing on September 17, 1991. Both parties concurred in proceeding with the matter as a request for a preliminary injunction without further consideration of a temporary restraining order. The parties submitted memoranda of law and affidavits in support of their positions. Accordingly, this matter is ripe for adjudication.

### STATEMENT OF THE CASE

Many of the relevant facts of this case were set out in prior published orders of this court, *see* 719 F.Supp. 428 (E.D.N.C.1989); 743 F.Supp. 1218 (E.D.N.C.1990), and a published decision of the United States Court of Appeals for the Fourth Circuit, 928 F.2d 1413 (4th Cir. 1991). Thus, the court will reiterate only those facts pertinent to the issues presently before the court.

Uniroyal Chemical Company, Inc. ("Uniroyal") discharged Sidney W. Fox, an employee of 17 years, on August 15, 1985. On February 13, 1986, Uniroyal hired Fox as a consultant, and this consulting employment relationship has continued throughout the years of this litigation. Effective September 5, 1991, Uniroyal terminated the consulting relationship with Fox. This termination is the subject of the present motion for injunctive relief.

Following his discharge in 1985, Fox brought an action against Uniroyal alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634. A jury found in favor of Fox and judgment was entered on August 10, 1989. On August 22, 1989, Fox moved this court for an order of reinstatement in lieu of damages. By order dated October 26, 1989, this court denied the motion for reinstatement, noting that Fox was then employed as an independent contractor by

Uniroyal and that affidavits submitted by Uniroyal showed animosity between Uniroyal employees and Fox. Uniroyal continued Fox's employment as a consultant for almost two years thereafter with no further allegations of animosity.

Appeal and cross-appeal of the various issues in this litigation was made to the Fourth Circuit. By published opinion decided April 1, 1991, the Fourth Circuit issued a mandate rejecting all challenges to the jury phase of the trial and affirmed the verdict of the jury except insofar as the jury awarded front pay. The award of front pay and the district court's order denying reinstatement were remanded to the district court for an equity trial to determine the appropriate equitable relief.

By order filed July 29, 1991, this court scheduled the equity trial to commence on October 21, 1991. Seven days later, on August 6, 1991, Uniroyal notified Fox of his termination as a consultant. Uniroyal then moved the Fourth Circuit to recall and stay its mandate pending the outcome of Uniroyal's petition for writ of certiorari to the United States Supreme Court. The Fourth Circuit granted the motion to recall and stay the mandate and the resulting equity trial on August 20, 1991. Uniroyal filed its petition for writ of certiorari to the United States Supreme Court which is now pending.

## STATEMENT OF THE FACTS

Fox was employed as a sales development representative in Uniroyal's Crop Protection Division when he was discharged in August, 1985. Beginning in February, 1986, Uniroyal retained Fox as a consultant pursuant to a series of short-term agreements. For the past five years, Fox has been acting as a consultant for Uniroyal under the terms of an agreement entered into on December 15, 1986, whereby he receives $4,000.00 per month plus expenses. During this time, he has not received a raise, a bonus, an employment benefit, or any retirement benefit.

The agreement expressly provides "Consultant's relationship to UNIROYAL is that of an independent contractor and shall not be construed as creating a partnership, joint venture or employment relationship between UNIROYAL and the Consultant." Exhibit B, ¶ 5. The agreement further provides that it is terminable by either party upon thirty (30) days written notice and is to be interpreted under Connecticut law. *Id.*, ¶¶ 8, 12.

Uniroyal advised Fox on August 6, 1991, by written notice via certified mail that it was terminating the consulting relationship with him effective thirty (30) days from that date. Fox alleges that this termination is emotionally and financially devastating to him and his family. Fox Aff. at 1. Based upon his unsuccessful attempts to find other employment during the past six years, he also alleges that it is highly unlikely that he will find another job because he is now 56 years of age and because most agrichemical companies are in a maintenance mode and are cutting back on staff. *Id.* at 5–7.

## DISCUSSION

### I. JURISDICTION

■ Before proceeding to the merits of the request for a preliminary injunction, this court must determine whether it has jurisdiction to rule on this matter in light of the Fourth Circuit's stay pending Uniroyal's petition for writ of certiorari to the United States Supreme Court. Resolution of this question requires an understanding of the procedural posture of this case. This court's research produced no case from the Fourth Circuit or other Court of Appeals addressing this jurisdictional question from the procedural posture presently before this court.

Analysis of the issue must begin with the applicable federal rules. Federal Rule of Appellate Procedure 8 provides that "an order ... granting an injunction during the pendency of an appeal must ordinarily be made in the first instance in the district court." Whereas this rule describes the procedure to be followed in seeking an injunction pending appeal, Federal Rule of Civil Procedure 62 addresses the power of the district court to grant such relief. *See*

*International Ass'n of Machinists v. Eastern Air Lines, Inc.*, 847 F.2d 1014, 1018 (2d Cir.1988). Under Rule 62(a), "[t]he provisions of subdivision (c) of this rule govern the ... granting of an injunction during the pendency of an appeal." Fed.R.Civ.P. 62(a). Subdivision (c) of Rule 62 authorizes the district court to "suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party." Fed.R.Civ.P. 62(c).

■ Rule 62 has been "narrowly interpreted to allow district courts to grant only such relief as may be necessary to preserve the status quo pending appeal where the consent of the court of appeals has not been obtained." *International Ass'n of Machinists v. Eastern Air Lines, Inc.*, 847 F.2d 1014, 1018 (2d Cir.1988). Although the filing of a notice of appeal divests the district court of jurisdiction over the aspects of the case involved in the appeal, *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 401–02, 74 L.Ed.2d 225 (1982), the district court is empowered to issue an injunction pending appeal when it is necessary to maintain the status quo. *Kidder, Peabody & Co., Inc. v. Maxus Energy Corp.*, 925 F.2d 556, 565 (2d Cir.1991) (injunction upheld because the district court found that injunctive relief was necessary to preserve the status quo); *Ortho Pharmaceutical Corp. v. Amgen, Inc.*, 887 F.2d 460, 464 (3d Cir.1989) (injunctive relief valid under Fed.R.Civ.P. 62(c) to preserve the integrity of the proceedings, even if the status quo is altered); *Coastal Corp v. Texas Eastern Corp.*, 869 F.2d 817, 820 (5th Cir.1989) (district court may issue an injunction if necessary to maintain the status quo); *Hoffman v. Beer Drivers & Salesmen's Local*, 536 F.2d 1268, 1276 (9th Cir.1976) (the district court has a "continuing duty to maintain a status quo").

The Fourth Circuit's holding in *Lewis v. Tobacco Worker's Int'l Union*, 577 F.2d 1135 (4th Cir.1978), *cert. denied, Lewis v. Philip Morris, Inc.*, 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 56 (1979), cited by the defendant Uniroyal, is not applicable here.

In *Lewis*, the Fourth Circuit held that once a party has filed an appeal of a district court's order *granting an injunction*, the district court no longer had any authority to amend or vacate the injunction after it had been appealed, absent a showing of necessity for securing the rights of the adversely affected party. *Id.* at 1139. The court in *Lewis* did not address the scope of the district court's authority to preserve the status quo. Furthermore, *Lewis* discussed only the district court's jurisdiction over an injunction already ordered and the subject of the pending appeal. Here, the question is not whether the district court can subsequently modify or alter relief previously granted or denied and the subject of a pending appeal, but whether the district court can grant new relief during the pendency of the appeal to preserve the present status of the parties. The cases cited above answer that question in the affirmative.

In this case, this court has not previously issued an injunction. The subject matter of the petition for writ of certiorari is the underlying litigation, which would not be affected by the injunctive relief sought by the plaintiff. Accordingly, this court finds that it has jurisdiction to hear this matter as part of its "continuing duty to maintain a status quo." *Hoffman*, 536 F.2d at 1276.

## II. FOX'S EMPLOYMENT RELATIONSHIP WITH UNIROYAL

■ Equitable relief under the ADEA is available to an "employee" wrongfully discriminated against because of age. *See* 29 U.S.C. § 623(a)(1). The defendant contends that an injunction cannot issue in this case because Fox is no longer an employee of Uniroyal, but is acting only as an independent contractor.

As the Fourth Circuit recognized, "[d]etermining who is an 'employee' under the Act, however, is an involved question." *Garrett v. Phillips Mills, Inc.*, 721 F.2d 979, 981 (4th Cir.1983). The ADEA defines "employee" as "an individual employed by any employer." 29 U.S.C. § 630(f). The Fourth Circuit gave substance to this definition in *Garrett* when it held that "wheth-

er an individual is an employee in the ADEA context is properly determined by analyzing the facts of each employment relationship under a standard that incorporates both the common law test derived from principles of agency and the so-called 'economic realities' test first announced in *Bartels v. Birmingham*, 332 U.S. 126, 67 S.Ct. 1547, 91 L.Ed. 1947 (1947)." *Garrett*, 721 F.2d at 981. The court stated that the proper method for determining the meaning of "employee" in an ADEA action is to combine the "economic realities" test and the common law right-of-control test. *Id.* at 981–82.

Under the test adopted by the Fourth Circuit, this court must consider several factors, the most important of which is the employer's amount of control over the individual. Other factors to be considered include:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Id.* at 982 (quoting *Spirides v. Reinhardt*, 613 F.2d 826, 832 (D.C.Cir.1979)).

After reviewing the affidavits submitted and the record in this matter, this court concludes that Fox is an "employee" of Uniroyal for ADEA purposes. The agreement entered into by Fox and Uniroyal on December 15, 1986, clearly states that Fox is an independent contractor. Exhibit B,

¶ 5. Nonetheless, the description of Fox's activities and responsibilities as a consultant indicate that Uniroyal exercised considerable control over his daily affairs. *See* Aff. of Sidney W. Fox. The agreement itself specifically describes the manner in which Fox was to perform his duties and requires that he report and plan his activities on a weekly and/or monthly basis. Exhibit B, ¶ 1(h). Fox received a regular salary plus reimbursement for incidental expenses. Exhibit B, ¶¶ 6, 7. Fox represented Uniroyal and acted on its behalf in connection with many specialized projects involving government agencies and potential customers. His work required a high degree of skill and knowledge of Uniroyal products. The consulting relationship continued for a period of five years. In almost every respect, *the work performed by Fox as a consultant was a continuation of the same type of work performed by him as an employee prior to his wrongful discharge.*

Being involved with this litigation for more than two years, this court is intimately familiar with the factual background of this case and believes it is uniquely qualified to review these factors in light of the long-standing relationship between Fox and Uniroyal. Although the defendant describes Fox's present request for relief as "a thinly veiled attempt to circumvent the recall of the mandate," this court finds that Uniroyal's argument that Fox is not an employee is a thinly veiled attempt to further evade its liability under the ADEA. Accordingly, this court finds that Fox, as a consultant, is an "employee" of Uniroyal for purposes of the ADEA.

## III. FACTORS IN DETERMINING WHETHER INJUNCTIVE RELIEF IS APPROPRIATE

As this court's authority for hearing this matter is derived from Fed.R.Civ.P. 62, the test for determining whether relief should be granted is the necessity for *maintaining the status quo.* However, both parties have briefed and argued this matter according to the standards set forth in Fed.R.Civ.P. 65 for issuing a preliminary injunction. Although this court finds that

it may issue an injunction without evaluating these factors, this court provides a few comments on them as they relate to this case to help illustrate the necessity for preserving the status quo.

Whether a preliminary injunction should issue requires the balancing of four factors: 1) the likelihood of success on the merits; 2) the irreparable injury to the plaintiff if the injunction is denied; 3) the harm to the defendant if the injunction is granted; and 4) the public interest. *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir.1991).

### A. *Likelihood of Success on the Merits*

The purpose of the injunctive relief requested in this case is not to prevent irreparable harm prior to an adjudication on the merits but to maintain the status quo pending an appeal of a previously adjudicated claim. The underlying ADEA claim was tried by a jury and a verdict was returned in favor of the plaintiff Fox. Following the trial, the defendant Uniroyal effected an unsuccessful appeal to the Fourth Circuit. The merits of Fox's ADEA claim now have been endorsed twice. Uniroyal has filed a petition for writ of certiorari to the United States Supreme Court.

Pending the Supreme Court's action on the petition, injunctive relief is necessary to maintain the status quo vis-a-vis the parties. The fact that Fox was employed by Uniroyal as a consultant was known at the time of trial and undoubtedly influenced the jury's deliberations. The ongoing employment relationship between Fox and Uniroyal is intertwined with the underlying ADEA action. Maintaining that status is necessary to prevent injustice to either party and to preserve the relationship for appellate review.

### B. *Irreparable Injury to the Movant*

 When an injunction is expressly authorized by statute, as under the ADEA, and the statutory conditions are satisfied, the movant is not required to establish specific irreparable injury before obtaining injunctive relief. *E.E.O.C. v. Cosmair, Inc.*, 821 F.2d 1085, 1090 (5th Cir.1987).

The Fifth Circuit applied the presumption of irreparable injury to ADEA retaliation cases in *Cosmair*. *Id.* at 1091. This court finds no reason for distinguishing between ADEA retaliation cases and ADEA wrongful discharge cases, and thus concludes that a presumption of irreparable injury arises upon a showing of age discrimination in violation of the ADEA.

Notwithstanding this presumption, the plaintiff Fox alleges in his affidavit that his present termination of employment will result in severe financial hardship and emotional distress. The defendant Uniroyal contends that economic injury alone is not sufficient to establish irreparable harm. The defendant's emphasis on the proof of irreparable harm is misplaced. The purpose of the presumption of irreparable injury in civil rights cases is to afford plaintiffs relief in areas where injury is difficult to establish. In this case, a jury has already determined that Uniroyal violated the ADEA by terminating Fox because of his age. Therefore, this court may properly presume that Fox has suffered irreparable injury.

### C. *Harm to the Defendant*

The third factor this court must consider is the harm to Uniroyal if injunctive relief is granted. Uniroyal asserts that an injunction will impair its right to contract and will diminish its management prerogatives. This court disagrees. Through the enactment of the ADEA, Congress recognized the right of employees not to be discriminated against because of their age, regardless of the employer's right to contract. In addition, any infringement on Uniroyal's management prerogatives by the issuance of an injunction is de minimis in comparison with Uniroyal's infringement on Fox's right to employment. Ironically, if Uniroyal had not wrongfully terminated Fox in 1986, it would not be before this court today arguing that the balance of hardship resulting from injunctive relief weighs in its favor.

### D. *Public Interest*

The public interest in eradicating age discrimination clearly weighs in favor of granting the requested injunctive relief.

The remedial provisions of the ADEA are designed to provide "make whole" relief to victims of age discrimination and to prevent retaliatory discharge. The public needs to know that courts are committed to enforcing civil rights legislation such as the ADEA. If Uniroyal is permitted to terminate Fox a second time, *after a successful age discrimination suit* and before equitable relief is available, the clear message from this court would be that discriminatory employers can continually run over victims of discrimination and make a mockery of civil rights legislation.[1] This is a message the court will not send. If civil rights legislation is to have any meaning to those within its protective care, the public must have confidence in the judicial system, and discriminatory employers must learn that their conduct will not be tolerated.

In accordance with the above findings, this court concludes that an injunction is both appropriate and necessary to preserve the status quo in this case pending the petition for writ of certiorari.

## IV. INJUNCTION AGAINST RETALIATION AGAINST OTHER EMPLOYEES

■ In addition to enjoining Uniroyal from terminating Fox's employment as a consultant, plaintiff Fox has also requested an injunction to prevent Uniroyal from retaliating against current employees who have or will participate in any manner with the investigation in support of Fox's claims or other proceedings related to this case. The remedial provisions of the ADEA are very broad. Section 626(b) incorporates the remedial provisions of the Fair Labor Standards Act which allow a court to enforce its provisions by ordering "any legal or equitable relief as may be appropriate to effectuate the purposes of this section." 29 U.S.C. § 216(b). The Fifth Circuit upheld a company-wide injunction barring the discontinuance of severance pay of other employees not involved in the subject litigation who file EEOC charges. *E.E.O.C. v. Cosmair, Inc.*, 821 F.2d 1085, 1091 (5th Cir.1987). The court upheld the company-wide injunction on the basis of sufficient evidence to show a company-wide policy of terminating payments to employees who file charges. *Id.*

■ Whether this court can issue a company-wide injunction against retaliation depends upon whether there is sufficient evidence to show that Uniroyal has a practice of retaliating against employees who assist in the preparation of ADEA claims. The plaintiff Fox has presented some evidence on this matter through affidavits and the testimony of a live witness. The witness who testified at the hearing on this matter was in obvious fear of losing his job because he testified, and the court believes he would not have appeared had he not been subpoenaed. The affidavit of another Uniroyal employee indicates that Uniroyal used threats and intimidation to dissuade employees from cooperating with Fox in the jury trial *and* to persuade them to ascribe to misleading affidavits.

Although the court concludes that it has jurisdiction and authority to issue such an injunction, and is persuaded that there may be a potential threat to other persons involved in this litigation, this court elects not to grant the request of the movant in the exercise of judicial caution. However, should any adverse personnel actions be taken against any of the parties coming forward and testifying on behalf of the plaintiffs in this matter, this court will not hesitate in accepting jurisdiction over any causes of action having their genesis in *Duke v. Uniroyal.*

## CONCLUSION

This court has been directly involved in this litigation for almost three years. Counsel on both sides have represented

---

1. This court notes that Uniroyal has previous experiences involving discriminatory employment practices and has paid millions of dollars in settlement of discrimination claims.

In October, 1979, Uniroyal agreed to a $5.2 million settlement of a sex discrimination case after the federal government barred Uniroyal from receiving federal contracts. Back pay was awarded to 750 women employees. Washington Post, Oct. 24, 1979, at E7. For another example, see *Chrapliwy v. Uniroyal, Inc.*, 509 F.Supp. 442 (N.D.Ind.1981), *aff'd in part, rev'd in part*, 670 F.2d 760 (7th Cir.1982), *cert. denied*, 461 U.S. 956, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983).

their respective clients with zeal and exceptional competence. The original jury trial lasted two and one-half weeks, and the jury returned a decisive and unequivocal verdict in favor of the plaintiffs. Additionally, this matter has been affirmed by the Fourth Circuit in all aspects except for the issue of the appropriate equitable remedies.

To this court's best understanding, the corporate defendant has not paid one cent of any adjudicated award to the plaintiffs, nor have any of plaintiffs' counsel fees been paid. In fact, execution on the judgment had issued at the time the defendant exercised its lawful right to petition the United States Supreme Court for writ of certiorari.

It was at this phase and with knowledge that this court had scheduled an equity trial to determine whether Fox should be reinstated to his original employment and in what amount, if any, front pay should be awarded that the defendant summarily dismissed Fox from what was termed an "independent contractor" relationship. The court fully recognizes and accepts the absolute right of the defendant to fight to the very end before paying one red cent. However, this court is sufficiently knowledgeable of the facts, circumstances, and personalities to recognize that potential grave injustices are beginning to happen to individual citizens by the continued utilization and exploitation of every legal right conceivable. This court desires to bring this issue to its conclusion at the earliest possible date so all parties can receive their benefits or discharge their responsibilities in as fair, equitable, and complete a manner as possible. This is not being accomplished when charge after charge is hurled and defense after defense is placed as an impediment.

This court concludes the same as the jury found in this case—that the plaintiff Sidney W. Fox was originally discharged from his employment by virtue of a violation of the ADEA—and is tired of seeing this perpetuated. Accordingly, this court hereby finds that the most recent termination of the "employment rights" of the plaintiff Sidney W. Fox have again been subrogated to extrinsic legal maneuvering and is blatantly and patently unfair to Mr. Fox.

Accordingly, it is hereby adjudged that plaintiff Sidney W. Fox is entitled to reinstatement to his position as consultant at the level of his compensation effective September 5, 1991, which this court understands was in the amount of four thousand dollars ($4,000) per month.

It is hereby ORDERED that Uniroyal, Inc., and Uniroyal Chemical Company, Inc., defendants in this action, shall within ten days of the filing of this order cause to be remitted to the plaintiff Sidney W. Fox compensation prorated at the rate of four thousand dollars ($4,000) per month from September 5, 1991, and on a regular monthly basis thereafter until further order of this court or order of a superior court.

It is further ORDERED that during this period of time, the defendant corporation may call upon the plaintiff Sidney W. Fox to perform services for the defendant in the type and manner existing over the previous five years and nothing more. If any additional burdens, hardships, or impediments are placed in the path of plaintiff Fox between now and the ultimate resolution of this matter by equity trial or further orders by superior courts, this court stands ready to hear such complaints and allegations with immediacy.