Tony PICKERING, et al., Plaintiffs,

v.

USX CORPORATION and United States Steel and Carnegie Pension Fund, Defendants.

Lynn A. BARNEY, et al., Plaintiffs,

v.

USX CORPORATION and United States Steel and Carnegie Pension Fund, Defendants.

Civ. Nos. 87–C–838 J, No. 88–C–763 J.

United States District Court, D. Utah, C.D.

Nov. 7, 1990.

Allen K. Young, Springville, Utah, Edward Moriarity, Gerry L. Spence, Robert P. Schuster, Spence, Moriarity & Schuster, Jackson, Wyo., for Pickering plaintiffs.

Lynn C. Harris, Provo, Utah, for Barney plaintiffs.

David A. Anderson, Gordon L. Roberts, Keith E. Taylor, Charles H. Thronson, Parsons, Behle & Latimer, Raymond J. Etcheverry, Michael L. Larsen, Salt Lake City, Utah, Leonard L. Scheinholtz, Hollis T. Hurd, Reed, Smith, Shaw & McClay, William R. Hawkins, D.B. King, J. Michael Jarboe, Dawne S. Hickton, Pittsburgh, Pa., for USX Corp., U.S. Steel and Carnegie Pension Fund.

Clark Waddoups, Gary F. Bendinger, Giauque, Wilcox & Bendinger, Salt Lake City, Utah, for defendants.

## MEMORANDUM OPINION AND ORDER

JENKINS, Chief Judge.

On June 12, 1990, the court heard argument on a series of motions for partial summary judgment filed by defendant USX Corporation ("USX"). At that time, the court reserved ruling on the following motions: USX's Sixth Motion for Partial Summary Judgment (Counts IV and V), USX's Eighth Motion for Partial Summary Judgment (Count IX), and USX's Ninth Motion for Partial Summary Judgment (Count VIII). Having considered carefully the memoranda and arguments of counsel, the court now issues its rulings on these motions. In making its rulings, the court incorporates in this opinion its previous description of the basic facts surrounding this controversy. *See Pickering v. USX Corp.*, No. 87–C–838J, slip op. at 3–7 (D.Utah Apr. 24, 1990).

### I.

■ The court considers first USX's Sixth Motion for Partial Summary Judgment. This motion deals with plaintiffs who were working in July of 1986, near the time of the "work stoppage," but who retired prior to December 31, 1986.[1] These plaintiffs allege that USX unlawfully induced them to retire by offering them guaranteed lump-sum pensions and medical benefits while at the same time refusing to disclose (or at least misleading) that USX planned to shut down Geneva Works—an act that allegedly would have entitled these workers to sizeable shutdown pensions. Count IV alleges that the retirement inducements violate section 510 of the Employee Retirement Income Security Act ("ERISA"). 29 U.S.C. § 1140 (1988). Count V alleges that these same acts violate section 4(a)(1) of the Age Discrimination in Employment Act (the "ADEA"). 29 U.S.C. § 623(a)(1) (1988). USX counters that these plaintiffs voluntarily retired, in part because of uncertainty surrounding future benefits in light of the impending expiration of collective bargaining agreements between USX and the United Steelworkers of America ("USWA").

The court denies USX's motion on Count IV, plaintiffs' ERISA section 510 claim, because there are genuine issues of material fact that must be resolved by a factfinder.[2] Among other issues, there remain

---

1. At oral argument, USX conceded that the motion does not deal with plaintiffs who may have retired *on* December 31, 1986. USX also acknowledged that the motion applies to Counts IV and V of the Third Amended Complaint and thus does not treat any of plaintiffs' claims that are based upon USX employee Karla Holm's alleged misstatements. Except where specifical-

ly noted, then, the court's ruling on this motion is no broader than the motion itself as framed.

2. USX raises for the first time in its reply memorandum the Tenth Circuit's recent decision in *Mitchell v. Mobil Oil Corp.*, 896 F.2d 463 (10th Cir.1990). USX relies upon *Mitchell* for the argument that 111 plaintiffs in Count IV who

questions of fact with respect to what and when USX knew about the probability of a plant shutdown (or "indefinite idling," depending upon what the facts reveal) and whether the information actually provided to employees was intended to—and/or actually did—mislead plaintiffs. It may be true, as USX argues, that USX had no duty to disclose internal company deliberations concerning the possibility of a shutdown. *See First National Maintenance Corp. v. NLRB*, 452 U.S. 666, 682–83, 101 S.Ct. 2573, 69 L.Ed.2d 318 (1981). But the question of whether or not certain information need be disclosed differs from the question of whether or not an employer may tell employees one thing while it knows its opposite to be true. It is clear to this court that mere failure to disclose differs substantially from active misstatement. Without concluding that USX did mislead employees, the court notes that questions of fact remain concerning whether USX had decided one thing internally while it actively told employees another. There also remains an unaddressed question of law concerning what quantum of active misstatement (if any there was) would constitute constructive discharge in violation of section 510 of ERISA.

■ As to Count V, plaintiffs' ADEA claim, the material facts are not in dispute and, as a matter of law, the court grants USX's Sixth Motion for Partial Summary Judgment as to all Count V plaintiffs, including those who retired *on* December 31, 1986. Section 4(a)(1) of the ADEA provides that employers shall not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1) (1988). As was true of plaintiffs' claims concerning the June Agreement, the evidence pertaining to the retirement inducements does not

establish a prima facie case under the ADEA. *See Pickering v. USX Corp.*, No. 87–C–838J, slip op. at 20 (D.Utah Apr. 24, 1990). Plaintiffs have adduced no evidence to suggest that they were singled out for disparate treatment and constructive discharge because of age. As is detailed above, the evidence that exists points to discrimination, if any at all, on the basis of pension status. This court has already ruled that age and pension eligibility are distinct and separate. *See id.* at 20–21.

Plaintiffs' protestations that age and pension eligibility are "inexorably linked" are belied by the actual terms of the pension plan in this case. *See id.* at 21 n. 20. As is true of most pensions plans, years of service—rather than age—is the primary factor in determining benefits eligibility. Absent some specific evidence of disparate treatment on the basis of age, the mere fact that older employees may have had more years of service than younger employees does not automatically convert the alleged pension benefits discrimination into age discrimination. A contrary holding would mean that virtually every discriminatory pension benefits denial in violation of ERISA section 510 would also constitute age discrimination. This court refuses to interpret the ADEA as a protection-broadening appendage to ERISA section 510. *See Public Employees Retirement Sys. v. Betts*, 492 U.S. 158, 109 S.Ct. 2854, 2867, 106 L.Ed.2d 134 (1989) (reasoning that the ADEA is not intended as an ERISA surrogate for protecting pension benefit rights). USX's motion is therefore granted as to Count V.

## II.

■ USX's Eighth Motion for Partial Summary Judgment seeks judgment on Count IX of plaintiffs' amended complaints. Count IX alleges that USX violated the

took lump-sum pensions have no standing to bring claims under ERISA as "participants."

The argument may or may not have merit, but the court will not rule on it at this time. Raised for the first time in reply (presumably because *Mitchell* was decided after USX filed its initial memorandum in support), the argument contravenes Rule 5(e) of the local Civil Rules of

Practice. Rule 5(e) provides, in part, that: "A reply memorandum must be limited to rebuttal of matters raised in the memorandum opposing the motion." The court will thus defer ruling until it has the benefit of full briefing by the parties. The court invites the parties fully to brief the standing issue in light of the *Mitchell* case.

ADEA by laying off plaintiffs prior to the "lockout/strike" in July of 1986 because of their age. Specifically, plaintiffs allege that USX discriminated on the basis of age by laying off senior plaintiffs, by refusing to recall them, and by using overtime and contracting out in lieu of recalls. All of these devices, plaintiffs contend, were part of USX's scheme to avoid pension benefits payout. USX denies these allegations and contends: first, that plaintiffs claims are untimely; second, that plaintiffs have not adduced evidence showing age discrimination; and third, that USX abided by a "bona fide seniority system" that is exempt from ADEA violation by the terms of ADEA section 4(f)(2). 29 U.S.C. § 623(f)(2) (1988).

The court addresses only the second of USX's arguments and, based upon it, grants USX's motion as a matter of law. The material facts are undisputed, and plaintiffs have failed to produce evidence showing that the layoffs, failures to recall, and use of overtime and contracting out discriminate on the basis of age. As before, plaintiffs misapprehend the distinction between pension benefits status and age as a basis for alleged discrimination.[3] While older Geneva Works employees may have lost more in pension benefits due to layoffs than their younger counterparts, that would be true of any layoff. Plaintiffs confuse age with years of service. Their ADEA claims in Count IX are, as USX points out, little more than recharac-

terizations of their ERISA section 510 claims in Count VIII. For the reasons outlined above and in the court's earlier Memorandum Opinion and Order, USX's Eighth Motion for Partial Summary Judgment is granted.

### III.

▇ The court examines finally USX's Ninth Motion for Partial Summary Judgment. In this motion, USX seeks judgment on Count VIII of plaintiffs' amended complaints as pled at the time of the motion.[4] Count VIII alleges that USX violated section 510 of ERISA by laying off (and failing to recall) plaintiffs prior to the "lockout/strike" in July of 1986. As in Count IX, plaintiffs point specifically to USX's use of overtime work and contracting out as evidence of a scheme to discriminate and defeat pension eligibility in violation of section 510.

USX denies these allegations. It argues that, due to the slumping domestic steel market, it made legitimate workforce reductions at all of its plants, that it followed the terms of a bona fide, union-negotiated seniority system, and that its use of contracting out and overtime was neither excessive nor an inefficient pretext for pension avoidance. USX also argues that plaintiffs' section 510 claims are barred by the applicable statute of limitations— whether borrowed from federal or state law.[5]

---

**3.** Plaintiffs' Memorandum in Opposition to USX's motion manifests plaintiffs' misunderstanding of the distinction between pension status and age as bases for discrimination. Plaintiffs argue "that [USX] targeted them for layoff because of the certainty that *if they kept working*, their cost to the company would increase *as they grew older*." Plaintiffs' Memorandum at 2 (emphasis added). Plaintiffs attempt to equate pension benefits denial with age discrimination. It may be that plaintiffs were targeted for layoff so that USX could avoid benefits. The fallacy, however, is that pension eligibility is conditioned primarily upon the first underlined clause. That is, the "if they kept working" language pertains to years of service—the key factor in any pension benefits calculation. Obviously, the mere passing of years, without time in employment, would not result in eligibility. Age may play a part in—but simply is not tantamount to—pension eligibility. Thus, without

some concrete evidence of age discrimination, even the most egregious pension avoidance scheme, where pension eligibility is based upon years of service, will not constitute age discrimination.

**4.** Plaintiffs subsequently sought and were granted leave to file a Fourth Amended Complaint.

**5.** ERISA does not contain a statute of limitations period for actions brought under section 510. Thus, the standard practice in such cases has been to borrow an analogous state or local statute of limitations. *See Wilson v. Garcia,* 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1941-42, 85 L.Ed.2d 254 (1985); *Held v. Manufacturers Hanover Leasing Corp.,* 912 F.2d 1197, 1205 (10th Cir.1990). Occasionally, where federal law provides no statute of limitations, courts look instead to a federal statute if it "clearly provides a closer analogy than available state statutes, and

The court denies USX's motion. While USX argues that the layoffs, overtime, and contracting out were efficient for the company and not intended to defeat pension eligibility, plaintiffs raise genuine questions of fact which should be resolved by a factfinder. Those genuine questions or issues include (but are not limited to) areas such as the actual efficiency, as opposed to the alleged pretext, of overtime and contracting out work and USX's intent in laying off and failing to recall employees. The record reveals at least some evidence to suggest that benefits avoidance may have been a factor in the layoff decisions. *See, e.g.*, Deposition of Karla Holm, Apr. 12, 1988, at 60. Finally, there remain questions of fact concerning whether or not USX engaged in a "continuing" course of conduct beyond the initial layoffs and, if it did, when the statute of limitations should begin to run on each plaintiff's claim.[6] For these reasons, the court denies USX's Ninth Motion for Partial Summary Judgment.

### IV.

Based upon the foregoing analysis, the court hereby orders, adjudges, and decrees as follows:

1. USX's Sixth Motion for Partial Summary Judgment is DENIED as to Count IV and GRANTED as to Count V;

2. USX's Eighth Motion for Partial Summary Judgment is GRANTED; and

when the federal policies at stake and the practicalities of litigation make that [statute] a significantly more appropriate vehicle for interstitital lawmaking...." *Del Costello v. Teamsters*, 462 U.S. 151, 172, 103 S.Ct. 2281, 2294, 76 L.Ed.2d 476 (1983).

**6.** Courts have taken varying positions on the appropriate statute of limitations applicable to section 510 actions. *See, e.g., Held v. Manufacturers Hanover Leasing Corp.*, 912 F.2d 1197, 1205 (10th Cir.1990) (borrowing three-year state employment discrimination statute); *Clark v. Coats & Clark, Inc.*, 865 F.2d 1237, 1242 (11th Cir.1989) (likening section 510 actions to contract claims and applying two-year state recovery of wages statute); *Gavalik v. Continental Can Co.*, 812 F.2d 834, 846 (3rd Cir.1987) (applying six-year state catch-all statute). Following these cases and the Supreme Court's directive in *Wilson v. Garcia*, 471 U.S. 261, 266–67, 105 S.Ct.

3. USX's Ninth Motion for Partial Summary Judgment is DENIED.

IT IS SO ORDERED.

1938, 1941–42, 85 L.Ed.2d 254 (1985), this court will not heed USX's suggestion that it borrow an analogous federal statute. Instead, this court will apply an analogous Utah state statute of limitations to plaintiffs' section 510 actions.

However, without the benefit of pretrial conference and the clear explication of the nature of plaintiffs' ERISA claims, the court declines at this time to select an appropriate Utah statute of limitations. USX suggests the two-year Utah statute applicable to actions "for the injury to the personal rights of another." Utah Code Ann. § 78–12–28(3) (1987). But it is not at all clear to this court that the "injury to personal rights" statute is more analogous to plaintiffs' claims than, for example, Utah's catchall four-year statute (§ 78–12–25) or its six-year statute for actions on a written contract (§ 78–12–23). At this stage, selecting one of these statutes as more analogous than the others would be premature guesswork.