Stephen J. BODNAR,
Plaintiff–Appellant,

v.

SYNPOL, INC., Defendant–Appellee.

J.E. BLANKENSHIP and B.E. Welch,
Plaintiffs–Appellants,

v.

SYNPOL, INC., Defendant–Appellee.

No. 86–2966.

United States Court of Appeals,
Fifth Circuit.

April 26, 1988.

Rehearing Denied May 26, 1988.

H.P. Wright, Wright & Pitre, Port Neches, Tex., for plaintiffs-appellants.

Stephen W. Smith, T.J. Wray, Fulbright & Jaworski, Houston, Tex., for defendant-appellee.

Before GARWOOD and JONES,
Circuit Judges, and HITTNER [*],
District Judge.

EDITH H. JONES, Circuit Judge:

The district court granted summary judgment against the three appellants, former employees of Synpol, Inc., who assert that their employer constructively discharged them in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 626(b) (ADEA). 633 F.Supp. 13 (E.D.Tex. 1986). We affirm the summary judgment because the early retirement program as instituted and executed by Synpol did not constructively discharge them.

## BACKGROUND

We recite as background the uncontested facts gleaned from the summary judgment evidence before the trial court. Synpol, Inc., formerly a subsidiary of Uniroyal, Inc., produces synthetic polymers in a plant in Port Neches, Texas. In 1983, Synpol's market for a synthetic polymer used in new car tires began to deteriorate drastically, prompting the company to embark on a dramatic cost reduction program. This program was announced to all employees in an information bulletin issued September 28, 1983. The information bulletin announced that the company intended to reduce capital spending, reduce costs due to absences, and reduce salary costs ten percent to fifteen percent through normal retirement, a Special Early Retirement Incen-

[*] District Judge of the Southern District of Texas, sitting by designation.

tive Program and reorganization to eliminate some jobs.

The Special Early Retirement Incentive Program (SERIP) was formulated to include salaried employees who were eligible for early retirement under the company's pension plan, having reached age 55 with ten years of company service. Certain eligible employees deemed essential to the company were not asked to participate in the SERIP. The SERIP necessarily excluded employees covered by collective bargaining agreements. At that time, out of a total work force of approximately 450 employees, there were about 160 managerial employees.

Twenty-eight employees were offered early retirement under the SERIP on September 27 and 28, 1983. Their retirement date would be effective no later than November 1st. They were given 15 days to accept or reject the offer. A variable bonus of up to $20,000 cash was the incentive for early retirement. The plan was discussed individually with each of the employees to whom it was offered. Eventually, 21 of the offerrees accepted the SERIP agreement, which included a release of claims against Synpol. The seven employees who declined early retirement under the SERIP are still employed by the company.

Appellants' evidence focuses on certain facts that are claimed to raise a jury issue concerning constructive discharge. First, they assert that the eligible employees were told that if they did not participate in the SERIP and their job was eliminated, they would not receive any severance pay or benefits. The employees did not "volunteer" to participate in early retirement but were "chosen" by the employer. They were told there would be a reduction in the work force. They were not given information concerning who, or how many, employees had been offered or had accepted the retirement plan. They were instructed not to discuss the SERIP offer with anyone

else. Requests for additional time to consider the plan beyond the 15–day period were denied. Presentations concerning early retirement under the SERIP were made to the employees in an allegedly "threatening" manner.

## DISCUSSION

■■■ Appellants assert that they were constructively discharged from their jobs by Synpol.[1] The test for this charge is whether a reasonable person in the employees' position would have felt compelled to resign under the circumstances. *Downey v. Southern Natural Gas Co.*, 649 F.2d 302, 305 (5th Cir.1981). Because this is an appeal from a summary judgment, we review the evidence in the light most favorable to the nonmovants for the purpose of determining whether any genuine issue of material fact exists that requires a trial. Fed. Rule Civ.Proc. 56(c); *Powers v. Nassau Development Corp.*, 753 F.2d 457, 462–3 (5th Cir.1985).

■■ In general, an employer's adoption of an early retirement plan does not create a prima facie case of age discrimination under the ADEA.[2] *Henn v. National Geographic Society*, 819 F.2d 824 (7th Cir. 1987); *Gray v. New England Telephone and Telegraph Company*, 792 F.2d 251, 255 (1st Cir.1986); *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66 (6th Cir. 1982). We need not recite the manifold reasons that justify such plans and render them, in many situations, the fairest alternative available to a company. But, from the employee's perspective, as Judge Easterbrook explained in *Henn:*

> Provided the employee may decline the [early retirement] offer and keep working under lawful conditions, the offer makes him better off. He has an additional option, one that may be … worth a great deal of money. He may retire, receive the value of the package, and either take a new job (increasing his in-

**1.** The district court ruled against appellants on the basis that they had voluntarily released their rights against the company under Title VII or the ADEA. We need not review this ruling because we hold that whether or not the releas-

es were voluntary, the appellants' constructive discharge claims fail.

**2.** 29 C.F.R. § 1625.9(f).

come) or enjoy new leisure. He also may elect to keep working and forfeit the package. This may put him to a hard choice; he may think the offer too good to refuse; but it is not Don Corleone "make him an offer he can't refuse." "Your money or your life?" calls for a choice, but each option makes the recipient of the offer worse off. When one option makes the recipient better off, and the other is the status quo, then the offer is beneficial. That the benefits may overwhelm the recipient and dictate the choice can not be dispositive."

819 F.2d at 826.

The picture becomes more complicated, however, when the offer of early retirement irrevocably changes the employee's status quo. In *Downey*, for example, the employee was apparently singled out, told his company had nothing for him to do and that he was in danger of being discharged and losing retirement benefits. We held that the threat of being discharged with a loss of benefits created a sufficient contested issue of material fact to make summary judgment on the employee's age discrimination claim improper. 649 F.2d 302, 305. *Downey* is not entirely apposite here, because it involved a claimed unique discriminatory act rather than a plan offered to numerous employees. *Downey* does, however, set an outer bound on permissible employer activity. An employer's "offer" of early retirement may create a prima facie case of age discrimination by constructive discharge if it sufficiently alters the status quo that each choice facing the employee makes him worse off. Of course, no individual employee or employee group may claim constructive discharge where all employees are subject to the same working conditions. See *Vaughn v. Pool Offshore Co.*, 683 F.2d 922, 926 (5th Cir.1982).

Judged by the foregoing standards, there are two complicating features in Synpol's SERIP plan. First, it was not offered to all employees at or near retirement age but only to non-essential, non-collective bargaining unit employees. Unlike the appellants, we do not find this feature consistent with a *Downey*-like possibility that they were discriminatorily "singled out." Synpol, bound by the terms of its collective bargaining agreement, would be unable unilaterally to alter the working conditions for employees covered by a union. Further, although Appellants allege that they were "singled out," their summary judgment evidence does not refute or undermine in any way Synpol's failure to extend SERIP to otherwise eligible non-essential managerial employees. Surely an employer faced with the need to cut its workforce in order to survive (a claim Appellants nowhere contradict) may not be required to cut off its ability to survive as well in order to escape ADEA liability for an early retirement bonus program. If there were no objective criteria for determining the employees excepted from the SERIP, an inference of age discrimination might arise. But there is no evidence to create such an inference here. An employer may implement an early retirement plan that does not extend to all potentially eligible employees if objective factors explain the exclusions.

Appellants' second significant area of objection to SERIP is that they were not really offered a "voluntary" opportunity for an early retirement bonus. Coercion allegedly inhered in (1) the short time afforded appellants for considering their options, (2) the supervisors' "threat" that if not enough employees accepted early retirement and the offeree's job was eliminated he would not receive any severance pay or non-pension benefits and (3) the tone and manner of those who explained the plan. None of these factors, taken singly or cumulatively, constitutes objective evidence that working conditions had become so intolerable as to force appellants' resignation.[3] The fifteen-day time period, al-

**3.** Synpol urges this court to disregard affidavits submitted by Appellants in opposition to the summary judgment motion on the grounds that they do not recite that they were made with personal knowledge, contain hearsay, allegations, ultimate facts and conclusions of law, and contradict sworn deposition testimony. Because, even considering the affidavits, Appel-

though not generous, is a far cry from the twenty-four hour take-it-or-leave-it proposal considered by the Second Circuit in *Paolillo v. Dresser Industries,* 821 F.2d 81 (2nd Cir.1987). Appellant Bodnar, for instance, had ample time to and did consult with a lawyer and examine his options. We would be inclined to scrutinize closely any plan that was offered to employees on a shorter schedule, but one must concurrently recognize that a struggling business often has to take rapid and decisive action to stem losses.

That risk inhered in eligible employees' failure to accept the SERIP bonus offer, the risk that their jobs might be eliminated because of economic pressure on the company, is likewise insufficient to suggest age discrimination. The element of risk distinguishes this case somewhat from the no-lose early retirement plan characterized in *Henn,* 819 F.2d 824, but Appellants' risk, if they stayed on, would be shared by all remaining employees of Synpol. Compare *Vaughn v. Pool Offshore, supra.* It is thus fair here, as in *Henn,* to say that the SERIP afforded Appellants a means to mitigate that risk which was not available to other employees.

The appellants' vague and subjective impressions of threats conveyed by their supervisors when discussing the SERIP plan are too insubstantial a reed, in the absence of objective factors or actions suggesting age discrimination, on which to found a jury issue. See *Henn,* 819 F.2d at 829–30. This conclusion is particularly true in the context of a constructive discharge claim, which relies on an objective test to evaluate what otherwise appears to be voluntary conduct by an employee.

Because we do not find evidence in the record sufficient to create a jury issue on whether Appellants were constructively discharged in violation of the ADEA, we AFFIRM the trial court's judgment.

lants do not allege facts sufficient to establish their claim of involuntariness, we need not address these issues.