The INTERPUBLIC GROUP OF
COMPANIES, Plaintiff,

v.

Michael S. LESSER, Defendant.

No. 89–CIV–6660 (LJF).

United States District Court,
S.D. New York.

Oct. 18, 1991.

Cleary, Gottlieb Stern & Hamilton by
Lawrence Friedman, New York City, for
The Interpublic Group of Companies.

Broudy & Jacobson by Lee Unterman
and Patricia Moore, New York City, for
defendant.

## OPINION

FREEH, District Judge:

Plaintiff, Interpublic Group of Companies, ("Interpublic"), has filed a motion for
summary judgment pursuant to Fed.
R.Civ.P. 56. Defendant, Michael S. Lesser,
("Lesser"), opposes the motion and cross-
moves for partial summary judgment. For
the reasons stated by the Court at the
conclusion of oral argument and herein,
Interpublic's motion is granted.

## FACTS

Construing the record in the light most
favorable to Lesser the relevant facts of
this case are as follows:

Lesser was employed by Interpublic as
Chairman and Chief Executive Officer of
Lowe Marschalk, Inc., ("Lowe Marschalk")
a subsidiary of Interpublic, from July 16,
1980 to March 29, 1989. On May 17th 1988
Lesser signed an agreement with Inter-
public in which Lesser promised to repay to
Interpublic upon its demand the full $349,-
300 value of the removal of his 1986 stock
award restrictions and his tax assistance
payment if he were to cease to be in Inter-
public's employ before May 17, 1990 for
any reason other than: (1) termination by
Interpublic; (2) death; (3) resignation on
account of disability; (4) resignation for
good reason as defined in Lesser's Execu-
tive Severance Agreement with Interpublic;
or (5) retirement.

From 1985 to 1989, Lowe Marschalk was
owned 70% by Interpublic and 30% by
Lowe PLC, another subsidiary of

Interpublic. The Chairman of Lowe PLC is Frank Lowe. Lesser and Lowe do not like each other. Beginning in mid–1988, Lowe sought to buy Lowe Marschalk but would not do so as long as Lesser was chairman. In or about January 1989, negotiations intensified between Grier and Lowe for the sale of the remaining 70% of Lowe Marschalk to Lowe PLC. In memos between Grier and Lowe the termination of Lesser as head of Lowe Marschalk was discussed.

On March 24, 1989, Lesser informed Interpublic that he would be leaving Lowe Marschalk to take a position as President of Ogilvy & Mather. Concerned about the possible effect Lesser's departure might have on Lowe Marschalk's Coca-cola and other accounts, Interpublic offered Lesser a higher paying position in the corporate offices of Interpublic. Lesser rejected Interpublic's offer and on March 29, 1989 Lesser resigned from Interpublic.

On April 25, 1989 Interpublic wrote Lesser, demanding the $349,300.00. payable no later than May 10, 1989. The money has not been paid.

## DISCUSSION

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The parties must base their affidavits on "personal knowledge" and set forth facts as would be "admissible in evidence." Fed.R.Civ.P. 56(e). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The movant may satisfy this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on which that party would have the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53,

91 L.Ed.2d 265 (1986). The non-moving party then has the burden of coming forward with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). The non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). To avoid summary judgment, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In the present case, the record before this Court, including affidavits and depositions, does not demonstrate any genuine issues of material fact for trial.

Lesser has failed to demonstrate that any genuine issue of material fact exists regarding his constructive discharge claim. The Repayment Agreement, under which Interpublic has sued, expressly provides that Lesser's repayment obligation would arise if he voluntarily ceased to be employed by Interpublic. Lesser does not dispute that Interpublic did offer him another genuine executive position in Interpublic's corporate offices for more money and that it was not a demotion. Lesser Tr. at 77. Therefore Lesser's obligation to repay his stock award was caused by his voluntary decision to leave Interpublic for Ogilvy & Mather instead of accepting the new position offered him by Interpublic.

In the context of an employee transfer, a claim for constructive discharge requires more than a subjective opinion that the new position is so intolerable that it forces a resignation. Even if Lesser had been confronted with a demotion in position or title, courts are very reluctant to find a constructive discharge bases solely upon the employee's opinion. *Neale v. Dillon,* 534 F.Supp. 1381, 1390 (E.D.N.Y.1982). Lesser offers no *material* facts to show that the new, higher paying executive position at Interpublic was so intolerable that it forced him to resign.[1]

---

1. At oral argument counsel for Lesser advised

the Court that Lesser had a unique relationship

Moreover, New York law is particularly hard pressed to find a constructive discharge when there is no evidence of reduction in salary or benefits, and the employee is asked to remain with his employer. *See Pena v. Brattleboro Retreat,* 702 F.2d 322 (2d Cir.1983); *Ioele v. Alden Press, Inc.* 145 A.D.2d 29, 536 N.Y.S.2d 1000, 1004 (1989); *Neale v. Dillon,* 534 F.Supp. 1381 (E.D.N.Y.1982). It is undisputed by Lesser that Interpublic's offer to Lesser was for increased compensation.

Finally, as the Second Circuit emphasized in *Pena v. Brattleboro Retreat,* 702 F.2d. 322, 326 (1983), the law does not provide a remedy for an overreaction to a reasonable business decision of an employer. Clearly Interpublic had a right to sell Lowe Marschalk to Lowe PLC. Even assuming that the chief obstacle to that sale was the animosity between the buyer Frank Lowe and Lesser, Interpublic nevertheless had a right, not only under their employment agreement with Lesser but also as a matter of sound business judgment, to move Lesser to another position in Interpublic. Moreover, accepting Lesser's allegations as true, the most Lesser could say is that he was unhappy with Interpublic's business decisions concerning Lowe Marschalk and with what he envisioned his future to be like at Lowe Marschalk if it were acquired by Lowe PLC.

Thus, every single one of the factors cited in the controlling precedents above are present in this case. Lesser has alleged nothing more than a hypothetical factual dispute and therefore as a matter of law his claim of constructive discharge must fail. *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990).

■ Lesser has also failed to establish the elements for his defense of Promissory Estoppel. Specifically, Lesser claims that another high ranking officer of Interpublic, Kent Kroeber, indicated to him that the repayment agreement would not be a problem if Lesser left Lowe Marschalk. The

elements under New York law for a defense of promissory estoppel are "a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made; and an injury sustained by the party asserting the estoppel by reason of his reliance." *Reprosystem, B.V. v. SCM Corp.,* 727 F.2d 257, 264 (2d Cir.1984). When Lesser was asked at his deposition whether he would have rejected Ogilvy & Mather's offer if he knew Interpublic would enforce the Repayment Agreement, Lesser stated that complying with the Repayment Agreement in and of itself would *not* have made him stay at Interpublic. Lesser Tr. at 283. Therefore Lesser's own deposition establishes that he did not rely upon Interpublic's alleged promise. Finally, even if Lesser did rely on Interpublic's promise he did not act reasonably in doing so. Lesser stated in his deposition that a waiver under the Repayment Agreement would have to be approved by Grier, and that Grier never told Lesser that Lesser did not have to comply with the Repayment Agreement. Lesser Tr. at 278–79.

### CONCLUSION

For the foregoing reasons, as well as those already stated by the Court at oral argument the plaintiff's motion for summary judgment is granted, the defendant's Counter claims are dismissed in their entirety and it is hereby ORDERED that Lesser pay Interpublic $349,300, plus interest from May 10, 1989 to the date of judgment, and interest thereafter on such judgment until it is satisfied, less $188,333 for Lesser's deferred compensation benefits.

SO ORDERED.

---

with one of Interpublic's most important accounts, Coca-cola. Lesser's contention that the new job offered by Interpublic was a "non-job" flies in the face of reason. Certainly Interpublic

would not risk losing the Coca-cola account, by damaging the unique relationship Lesser had established with Coca-cola.