**James F. MULLINS**

v.

**PFIZER, INC.**

**Civ. No. 2:90CV00917 (AHN).**

United States District Court,
D. Connecticut.

June 30, 1993.

Joseph E. Moukawsher, Moukawsher & Moukawsher, Groton, CT, for plaintiff.

Jonathan Orleans, Zeldes, Needle & Cooper, Bridgeport, CT, for defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NEVAS, District Judge.

This is a five count employment discrimination action brought by James Mullins

("Mullins") against his former employer, Pfizer, Inc. ("Pfizer"). The action arises from allegations that Mullins was constructively discharged and fraudulently induced into accepting early retirement. Specifically, the amended complaint alleges: (1) a deprivation of retirement benefits in violation of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. 29 U.S.C. § 1140; (2) a violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA") and (3) claims of wrongful discharge, breach of contract, and breach of covenant of good faith under Connecticut law. Currently pending is defendant's motion for summary judgment. For the reasons stated below, the court GRANTS Pfizer's motion for summary judgment.

## Standard of Review

In a motion for summary judgment, the moving party bears the burden of establishing that no genuine issues of material fact are in dispute and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Rule 56(c) mandates summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). All factual inferences are drawn in favor of the non-moving party. *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989).

## Facts

Applying these rules, the court finds the following facts undisputed.

1. On April 1, 1990, Mullins left his job as a laboratory development technician in Pfizer's Clarification Division. At the time, Mullins was 57 years-old, and had been employed by Pfizer for approximately 34 years, the last ten at the Clarification Division.

2. In 1987, Martin Kimiatek ("Kimiatek") became Mullins' supervisor. Kimiatek was responsible for enforcing Pfizer's attendance policy. The attendance policy provided no system of earned sick days and sought to minimize unanticipated and/or unplanned absences.

3. During the period from 1988 through 1989, Mullins received three verbal warnings, one written warning, and a one day suspension pursuant to the attendance policy. As of February 27, 1989, Mullins was required to document medical absences with a doctor's note.

4. Mullins contacted Kimiatek's supervisors concerning his displeasure over Kimiatek's enforcement of the attendance policy.

5. In March of 1989, pursuant to Mullins' request, Pfizer notified Mullins that his early retirement papers were ready.

6. On April 1, 1990, Mullins signed an early retirement form and terminated his employment with Pfizer.

7. On May 16, 1990, after Mullins was no longer a Pfizer employee, Pfizer announced and published a Voluntary Separation Option program (the "VSO") for its employees.

8. The VSO included coordinated release dates between August 6, 1990, and December 1, 1990, for all individuals who entered the program. Under the VSO, enrolled employees would receive benefits calculated individually based on their length of service, pension status, and used vacation days status. The VSO also included increased eligibility for medical, dental, and life insurance coverage for employees who were not vested in their pensions for an additional 12 month period following termination or until employed by another organization and eligible for coverage under another group. Participating employees were eligible for up to $4,000 in education assistance for a 24 month period to provide additional retraining to enhance their employability.

9. Prior to the announcement of the VSO, the VSO was under consideration by Pfizer as of February, 1990. It was Pfizer's policy to deny any rumor concerning the offering of the VSO until it officially announced the plan. On February 9, 1990, in response to rumors that the plan was in the offing, Pfizer announced to its employees that it was not

considering offering an increased lump sum severance plan in the foreseeable future.

### Discussion

As a preliminary matter, the court notes that the complaint is unclear as to the theories of liability that underlie the various claims and the specific relief Mullins seeks for each. A liberal reading of the complaint, however, suggests that Mullins' action is two pronged. First, the complaint appears to set forth a claim of constructive discharge based on age discrimination in violation of the ADEA. In support of this claim, Mullins alleges that Pfizer's selective enforcement of its attendance policy and its denial of its intention to offer the VSO severance package harassed and induced him into taking early retirement. Second, Mullins appears to set forth a claim for lost benefits suffered as a result of the fact that he left Pfizer 46 days prior to the company's announcement of increased severance benefits under the VSO. In support of the claim for lost severance benefits, Mullins puts forth alternative theories of liability: an ERISA claim under section 1140 in count one and a plethora of state law causes of action in counts three through five. Significantly, all of the claims in this case derive from the underlying allegation that Mullins was constructively discharged.

In response, the crux of Pfizer's summary judgment motion challenges the sufficiency of Mullins' allegation of constructive discharge. Pfizer insists that the record fails to support a claim of constructive discharge as a matter of law. Pfizer argues that the voluntary nature of Mullins' retirement is dispositive of all claims in this case. In the alternative, Pfizer contends that even if the court finds sufficient evidence to support a claim of constructive discharge at this stage of the proceedings, Mullins' claims for lost benefits under either ERISA or state law are not actionable. Accordingly, the court takes up the sufficiency of the constructive discharge allegation before proceeding to evaluate the specific ADEA, ERISA and state law claims.

### A. Constructive Discharge

Pfizer argues that Mullins' termination was at his own behest when he voluntarily took early retirement. It argues that Mullins' subjective belief that he was forced into retirement or resignation is insufficient as a matter of law to establish a constructive discharge. Pfizer contends, moreover, that Mullins' reliance on its announcement that an increased lump sum severance package was not under consideration is insufficient to convert an otherwise voluntary retirement into a constructive discharge. Pfizer concludes that in the absence of any objective evidence that Mullins was forced to retire, he cannot establish a constructive discharge as a matter of law and thus, the derivative causes of action must fail.

In response, Mullins contends that but for Pfizer's selective enforcement of its attendance policy and its express denial that the VSO was in the offing, he would not have chosen to take early retirement on April 1, 1990. Mullins argues that his reliance on Pfizer's material misrepresentation concerning the offering of a lump sum severance plan together with the conditions created by Pfizer's selective enforcement of the attendance policy renders his decision to retire involuntary. In so doing, Mullins appears to ask the court to extend the doctrine of constructive discharge to cover situations where an unhappy employee, relying on imperfect information provided by the employer about retirement benefits, chooses to retire rather than stay on with the company under the status quo. In the absence of any direct authority for such a view, the court declines to extend the concept of constructive discharge to Mullins' situation.

In this circuit, a finding of constructive discharge requires "that the trier of fact ' "be satisfied that the * * * working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." ' " *Martin v. Citibank, N.A.*, 762 F.2d 212, 221 (2d Cir.1985) (quoting *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir. 1983) (citations omitted)); *see also Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1079 (3rd Cir.1992); *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1214 (5th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 68, 121 L.Ed.2d 35 (1992). The constructive dis-

charge doctrine applies with equal force to all forms of employment discrimination including ADEA and ERISA claims. *Gray,* 957 F.2d at 1079 n. 3; *see also Christopher,* 950 F.2d at 1214; *Berger v. Edgewater Steel Co.,* 911 F.2d 911 (3rd Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1310, 113 L.Ed.2d 244 (1991); *Mitchell v. Mobil Oil Corp.,* 896 F.2d 463, 467 (10th Cir.), *cert. denied,* 498 U.S. 898, 111 S.Ct. 252, 112 L.Ed.2d 210 (1990); *Bodnar v. Synpol, Inc.,* 843 F.2d 190, 192 (5th Cir.), *cert. denied,* 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988). Connecticut also recognizes the constructive discharge doctrine. *See, e.g., Seery v. Yale–New Haven Hospital,* 17 Conn.App. 532, 554 A.2d 757 (1989). A "discharge" within the meaning of the ADEA "may be constructive if a reasonable person in the employee's position would have felt compelled to resign under the circumstances." *Christopher,* 950 F.2d at 1214 (citing *Bodnar,* 843 F.2d at 192). Involuntary retirement cases, therefore, present two possible scenarios of constructive discharge, both of which are relied upon by Mullins in this case.

Under the first, the "[t]he employer must have ' "deliberately [made] an employee's working condition so intolerable" ' " as to *force* the resignation." *Martin,* 762 F.2d at 221 (emphasis added) (citations omitted). Under this theory, a finding of constructive discharge turns on " "whether the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign.' " *Mitchell,* 896 F.2d at 468 (quoting *Derr v. Gulf Oil Corp.,* 796 F.2d 340, 344 (10th Cir.1986)). In considering the sufficiency of a constructive discharge claim on summary judgment, "the law does not permit an employee's subjective perceptions to govern...." *Bristow v. Daily Press, Inc.,* 770 F.2d 1251, 1255 (4th Cir. 1985), *cert. denied,* 475 U.S. 1082, 106 S.Ct. 1461, 89 L.Ed.2d 718 (1986). Accordingly, a plaintiff must provide some *objective* evidence of intolerable working conditions to withstand a motion for summary judgment attacking an allegation of constructive discharge.

Here, the record does not support Mullins' claim that his working conditions had become objectively intolerable by virtue of Pfizer's enforcement of its attendance policy. Construing the record in a light most favorable to Mullins, including the inference that Pfizer selectively enforced aspects of its attendance policy more strictly against Mullins than younger employees, the record, nonetheless, fails to support the claim that Mullins' employment conditions were so intolerable that he was forced to retire in April of 1990.

Admittedly, Mullins provides the court with a scintilla of objective evidence concerning the possibility that the attendance policy may have been selectively enforced. Such evidence, however, goes only to the issue of whether or not Pfizer's conduct may have been discriminatory *not* whether or not the conduct made Mullins' job so intolerable that he was forced to retire. The record is devoid, moreover, of any other evidence that Pfizer's enforcement of its attendance policy made Mullins' employment so difficult or uncomfortable that a reasonable person would be compelled to retire. Indeed, the sum total of action taken by Pfizer with respect to Mullins' alleged failure to comply with the attendance policy from 1988 through 1989, the period complained of by Mullins, amounted to three verbal warnings, one written warning, a one day suspension for alleged absenteeism, and the imposition of the requirement that Mullins document all future medical absences with a doctor's note. All of these documented actions took place more than one year prior to his decision to retire, the last of which occurred on February 27, 1989, more than thirteen months prior to Mullins' termination on April 1, 1990.

Finally, Mullins' contention that Pfizer's imposition of a doctor's note requirement was an "insult" that he could not tolerate, (*see* Deposition of James Mullins, Filing No. 56, Def.'s Rule 9(c) Stat. Undisputed Facts, Ex 1, at 55–57, 64–65), is purely subjective in nature. An employee's subjective perceptions are insufficient to establish a constructive discharge. *Bristow,* 770 F.2d at 1255. Accordingly, subjective allegations, coupled with evidence that Pfizer warned, and ulti-

mately suspended Mullins for a day, more than a year prior to his decision to retire, fail to establish the type of intolerable working conditions required to sustain a claim of constructive discharge. *Cf. Martin,* 762 F.2d at 221 (informal, oral warnings concerning complaints about plaintiff's attitude coupled with supervisor's attempt to humiliate her in front of other employees insufficient as a matter of law to establish constructive discharge); *Bristow,* 770 F.2d at 1255 (demographics of district creating additional work problems not experienced by employees in other districts does not constitute intolerable work conditions despite plaintiff's personal frustration); *Interpublic Group of Companies v. Lesser,* 775 F.Supp. 697, 698–699 (S.D.N.Y. 1991) (employee's opinion that condition had become intolerable insufficient to establish constructive discharge); *with Goss v. Exxon Office Sys. Co.,* 747 F.2d 885, 888–889 (3rd Cir.1984) (allegations of forcible transfer to position with lower salary and inferior working conditions coupled with verbal abuse sufficient to establish viable claim of constructive discharge); *Meyer v. Brown & Root Constr. Co.,* 661 F.2d 369, 371–372 (5th Cir. 1981) (involuntary transfer of pregnant employee to position involving substantial risks to her health constituted a constructive discharge).

■ A liberal reading of the complaint, however, suggests that Mullins relies on a second theory of constructive discharge, a theory unique to early retirement cases. Under this second theory, the inducement of early retirement through the use of severance package incentives may constitute a constructive discharge under certain circumstances. *See Mitchell,* 896 F.2d at 467–469; *Bodnar,* 843 F.2d at 193. In such cases, an employee bears the burden of proving that an offer of early retirement " 'sufficiently alters the status quo that each choice facing the employee makes him worse off' and that if he refuses the offer and decides to stay, his employer will treat him less favorably than other employees because of his age." *Mitchell,* 896 F.2d at 467 (quoting *Bodnar,* 843 F.2d at 193). A plaintiff can satisfy this burden under one of two scenarios: (1) if the decision to retire is induced by withholding or reducing or threatening to withhold or reduce benefits from those who chose not to retire; or (2) if the choice facing the employee as a result of the change in the threshold provisions of the retirement plan leaves him worse off than before. *See Mitchell,* 896 F.2d at 469. An early retirement offer which simply requires the employee "to make the difficult choice between retirement with receipt of previously unavailable incentives and continued work under the same conditions, however, does not result in constructive discharge because the employee is no worse off whichever option the employee chooses." *Id.* at 467; *see also Schuler v. Polaroid Corp.,* 848 F.2d 276 (1st Cir.1988); *Henn v. National Geographic Soc'y,* 819 F.2d 824 (7th Cir.), *cert. denied,* 484 U.S. 964, 108 S.Ct. 454, 98 L.Ed.2d 394 (1987). Thus, this theory of constructive discharge applies only to "those situations in which the employer uses a stick, the reduction or withholding of benefits to which the employee was entitled *prior to the offer of early retirement,* to force employees to accept an offer of early retirement." *Mitchell,* 896 F.2d at 469 n. 2 (emphasis added).

■ Here, Mullins invites the court to find constructive discharge where an employer increases severance benefits shortly *after* the employee chooses retirement in cases where the employee's retirement decision was based on the employer's denial that an increased severance package was in the offing. Mullins' claim, however, is unsupported by law or policy.

First, Mullins points to no evidence suggesting that Pfizer threatened to withhold or reduce existing benefits in an effort to force him into retirement. Rather, Mullins requested and was sent his early retirement papers entitling him to the full benefits under the existing severance package offered at the time he chose retirement.

The record, moreover, is devoid of any evidence that Pfizer threatened to demote or make him worse off than he was at the time of retirement had he chosen to remain employed. To the contrary, Mullins claim is that he would have been *better off* than the status quo had he chosen to remain employed for six more weeks.

Finally, evidence that Pfizer officially denied rumors of its plan to offer increased severance benefits in the near future fails to alter the fact that the choices confronting Mullins *at the time of his retirement decision* did not leave him worse off than *before* his retirement. At best, Mullins' situation involved the difficult choice between remaining employed under the status quo in the hope that increased benefits might be offered at some point in the future or taking the available severance package at the time. In the absence of case law supporting a finding of a constructive discharge under circumstances in which the employee, albeit acting with imperfect information, was confronted with an early retirement choice offering the status quo or possibly better, the court is compelled to conclude that Mullins' retirement was voluntary. *Cf. Mitchell,* 896 F.2d at 467 (plaintiff was constructively discharged because choice between retiring under existing severance plan and remaining employed left plaintiff worse off than status quo where continuing to work could result in failure to requalify for any severance benefits).

▮ Second, the court is unaware of any legal duty obligating an employer to provide an employee with perfect information concerning the future offering of increased severance benefits. *See Raymond v. Mobil Oil Corp.,* 983 F.2d 1528, 1536 (10th Cir.1993), *petition for cert. filed,* U.S.L.W. (June 3, 1993). Indeed, a survey of recent cases which have considered the existence of such a duty, including case law involving ERISA, suggest that an employer's denial of its intention to increase severance benefits *prior* to a formal decision to increase such benefits is not actionable.[1] *See, e.g., Raymond,* 983 F.2d at 1536–37; *Stanton v. Gulf Oil Corp.,* 792 F.2d 432, 435 (4th Cir.1986); *see also Bass v. Retirement Plan of Conoco, Inc.,* 676 F.Supp. 735, 742–743 (W.D.La.1988). In general, "an employer has the right at any time to amend or terminate a severance pay plan." *Reichelt v. Emhart Corp.,* 921 F.2d 425, 429 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2854, 115 L.Ed.2d 1022 (1991); *see also James v. Fleet/Northstar Financial Group, Inc.,* Civil No. 2:91cv00124 (PCD) (D.Conn. July 27, 1992) (Dorsey, J.), slip op. at 7. An employer, moreover, "does not owe its employees a fiduciary duty when it amends or abolishes a severance benefit plan." *James,* slip op. at 8. It follows, therefore, that "[i]t is not a violation of ERISA to fail to furnish information regarding amendments before these amendments are put into effect." *Stanton,* 792 F.2d at 437; *see also Bass,* 676 F.Supp. at 742. "This is so because the legislative intent of ERISA was not to assure the sanctity of early retirement expectations, but to safeguard *accrued* retirement benefits." *Id.* (emphasis added).

Here, Mullins' claim of constructive discharge implicitly contravenes the prevailing view that Pfizer had no duty to disclose future increases in its severance benefits. The record indicates that the VSO program was not approved by Pfizer until May 9, 1990, almost six weeks after Mullins retired. Admittedly, the record indicates that in February of 1990, Pfizer issued a denial that the VSO was in the offing in response to rumors that an increase in severance benefits was forthcoming. To allow such a denial to convert an early retirement into a constructive discharge, however, would be tantamount to creating a duty to disclose that the courts have yet to recognize, *see Raymond,* 983 F.2d at 1536; *Stanton,* 792 F.2d at 435, would impose a burden upon business that was not contemplated under ERISA, and, in this court's opinion, would contravene the long term interests of employees as well as employers. Accordingly, the court concludes, in the absence of any law to the contrary, that the record fails to establish

---

1. To the extent that Mullins argues that the fraudulent failure to disclose future severance benefits to an employee constitutes a constructive discharge, an inquiry into the scope of an employer's duty to disclose severance benefits is warranted. The court is aware, however, that the duty to disclose severance benefits is also intertwined with Pfizer's challenge to Mullins' standing to raise an ERISA claim. Indeed, the ERISA cases relied on here all discuss the duty issue in the context of whether a retired employee has standing as a "participant" to assert an ERISA claim. The court, nonetheless, finds the ERISA cases helpful in its evaluation of the underlying constructive discharge claim in this case.

that Mullins was constructively discharged as a matter of law.

### B. *Application*

The finding that Mullins was not discharged as a matter of law, however, does not technically end the court's inquiry. The court must now proceed to evaluate the sufficiency of Mullins' complaint in light of the finding that his retirement was voluntary.

### 1. *ADEA Claim*

■ ADEA claims are subject to the three-part burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *See Hollander v. American Cyanamid Co.*, 895 F.2d 80, 83 (2d Cir.1990); *Butchko v. Textron Lycoming*, 796 F.Supp. 63, 65 (D.Conn.1992). Under this analysis, plaintiff bears the initial burden of establishing a prima facie case of age discrimination. *Id.* If plaintiff meets its burden, "[t]he burden then shifts to the employer to counter the prima facie case by advancing a legitimate, non-discriminatory reason for its action." *Hollander*, 895 F.2d at 83. Finally, plaintiff can seek to rebut the employer's explanation by offering evidence "that the purported non-discriminatory reason was not true and in fact was a pretext for discrimination." *Id.*

■ To establish a prima facie case of age discrimination, a plaintiff must show that: (1) he falls within the protected age group; (2) he was qualified for the job; (3) he was discharged; and (4) the discharge occurred under circumstances giving rise to an inference of discrimination based on age. *Hollander*, 895 F.2d at 83; *Butchko*, 796 F.Supp. at 65. The plaintiff's burden of proof at the prima facie stage, moreover, has been characterized as "*de minimis.*" *Butchko*, 796 F.Supp. at 66 (quoting *Dister v. Continental Group, Inc.*, 859 F.2d 1108 (2d Cir.1988)).

■ Clearly, the finding that Mullins' termination was voluntary is fatal to the ADEA claim. *See Pena*, 702 F.2d at 325–326 (2d Cir.1983). Since no discharge occurred, Mullins cannot establish a prima facie case of age discrimination. Accordingly, Pfizer is entitled to summary judgment on that count.

### 2. *ERISA and State Law Claims for Lost Benefits*

As a preliminary matter, the court notes that Mullins pleads alternative claims of relief for severance benefits allegedly lost as the result of his failure to qualify for the VSO program. In count one, Mullins sets forth an ERISA claim under 29 U.S.C. § 1140. In the event that the court concludes that the VSO program does not qualify as a welfare benefit plan governed by ERISA, Mullins sets forth state law claims of wrongful discharge, breach of contract, and breach of covenant of good faith in an effort to recover compensatory damages equivalent to the amount of VSO benefits he would have qualified for had he remained employed. Because the court concludes that no constructive discharge occurred in this case, however, Mullins cannot recover VSO benefits under either state or federal law. Accordingly, the court need not decide whether federal or state law governs his claims for lost benefits.

■ ERISA "makes it unlawful for an employer to 'discharge, fine, suspend, expel, discipline, or discriminate against a participant' for exercising a right provided by ERISA or 'for the purpose of interfering with the attainment' of a right provided by ERISA." *Christopher*, 950 F.2d at 1221 (quoting 29 U.S.C. § 1140). To establish a prima facie case under § 1140 of ERISA, an employee must show: " '(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled.' " *Berger*, 911 F.2d at 922 (quoting *Gavalik v. Continental Can Co.*, 812 F.2d 834, 852 (3rd Cir.), *cert. denied*, 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987)). In addition, the employee must be a plan "participant" to have standing to raise such a prima facie claim. *See Raymond*, 983 F.2d at 1535–1537; *Christopher*, 950 F.2d at 1222. The crux of Mullins' ERISA claim is that Pfizer interfered with his ability to obtain the increased VSO program benefits by construc-

tively discharging him prior to the vesting of the VSO benefits. Thus, to establish a prima facie claim under ERISA, Mullins must establish that he was constructively discharged. *See Berger*, 911 F.2d at 922–923.

■ As with the ADEA claim, the finding that Mullins' retirement was voluntary is fatal to his efforts to establish a prima facie case under ERISA. *Id.* Specifically, the finding that Mullins retired voluntarily precludes him as a matter of law from establishing that Pfizer either interfered with his right to obtain VSO benefits or that Mullins was a plan participant with standing to invoke ERISA's protection.

Similarly, Mullins cannot prevail on his state law claims for wrongful termination, breach of contract, and breach of covenant of good faith without first establishing that he was discharged. *See Seery*, 17 Conn.App. at 540. Accordingly, Pfizer is entitled to summary judgment on all claims relating to his efforts to recover additional severance benefits under the VSO program.

In closing, the court notes that its ruling today is limited to the record in this case. The court offers no view as to whether other types of alleged fraudulent inducements of early retirement which go beyond a mere failure to disclose would constitute a constructive discharge and/or be legally actionable. *Cf. Christopher*, 950 F.2d at 1221 ("but for the employer's conduct alleged to be in violation of ERISA, the employee *would* be a current employee with a reasonable expectation of receiving benefits, and the employer should not be able through its own malfeasance to defeat the employee's standing"); *Saporito v. Combustion Eng'g Inc.*, 843 F.2d 666, 672 (3rd Cir.1988) (retirement not voluntary but fraudulently induced where employer did more than simply not inform plaintiff of development of future plan but selectively informed certain employees of more lucrative plan while not informing plaintiff), *vacated* 489 U.S. 1049, 109 S.Ct. 1306, 103 L.Ed.2d 576 (1989); *Henn*, 819 F.2d at 828–829 (voluntary nature of early retirement turns, in part, on whether employee's receipt of information was free from fraud and/or misconduct); *see also Stone v. University of Maryland Medical Sys. Corp.*, 855 F.2d 167 (4th Cir.1988) (in cases involving level of due process protection afforded public employees, voluntariness of retirement or resignation is "fundamentally vitiated" where employer's misrepresentation or nondisclosure of an employee's rights is implicated). Indeed, while not legally actionable under the controlling case law, the court finds that Pfizer's alleged conduct is, nonetheless, disturbing. The court's ruling, therefore, should not be construed as a license for employers to lie about prospective severance benefit plans as a means of inducing early retirement. Rather, the court holds only that in this rapidly evolving area of the law, the court can find no case law to date that supports the finding of a constructive discharge based on the allegations and record submitted in this case.

### Conclusion

For the reasons stated above, Pfizer's motion for summary judgment [Filing No. 53] is GRANTED as to all counts and the clerk of the court is directed to enter judgment accordingly.

**SO ORDERED.**